# In the United States Court of Federal Claims

## FOR PUBLICATION

No. 25-2025C
(Filed: April 3, 2026)

|  |  |
|---|---|
| **THOMAS K. CULLERTON**, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) |
| **UNITED STATES**, | ) |
| | ) |
| *Defendant.* | ) |

*Thomas K. Cullerton*, St. Augustine, FL, pro se.

*Albert S. Iarossi*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant.  With him on the briefs were *Brett A. Shumate*, Assistant Attorney General, and *Patricia M. McCarthy*, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC.

## OPINION AND ORDER

***BONILLA, Judge***.

Pro se plaintiff Thomas K. Cullerton seeks severance pay following his involuntary separation from the United States Forest Service.  The government moves to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), arguing that Mr. Cullerton's claim is barred by operation of the applicable regulations.  In response, Mr. Cullerton opposes dismissal and cross-moves for summary judgment pursuant to RCFC 56.  Mr. Cullerton also filed preemptive and follow-on motions related to the composition of the evidentiary record.  Defendant requests that further briefing and consideration of plaintiff's dispositive cross-motion and procedural motions be deferred pending a ruling on the motion to dismiss.  For the reasons stated below, defendant's dispositive motion is granted, plaintiff's dispositive cross-motion is denied, and the parties' remaining motions are denied as moot.

## BACKGROUND

Mr. Cullerton began working for the Forest Service on September 3, 2011. On April 5, 2024, he settled an equal employment opportunity (EEO) complaint against the United States Department of Agriculture (USDA).[1] Under the terms of the settlement agreement, the Forest Service agreed to reassign Mr. Cullerton to a fully remote Partnership Coordinator position within the Public and Government Relations Directorate, servicing the Eastern Region of the United States (Region 9).[2] The Deputy Regional Forester for Region 9 executed the settlement agreement on behalf of the agency.[3, 4]

Later that year, on December 1, 2024, Mr. Cullerton applied for immediate disability retirement under the Federal Employees Retirement System (FERS). In his application, Mr. Cullerton listed three injuries sustained during his prior military service[5] and his work with the Forest Service: "service[-]related disabilities" (presumably service-related PTSD), a disability "related to [his] 2023 USDA Forest Service duty station poisoning per [Occupational Safety and Health Administration (OSHA)] report,"[6] and injuries sustained during a July 26, 2024 car accident reportedly resulting from his "work environment playing out in [the] real world." ECF 13-3 at 38. Describing how his injuries interfered with the performance of his Partnership Coordinator duties, Mr. Cullerton explained that he had "[s]tress and memory issues," "ha[d] to . . . keep multiple to-do lists to keep track of work duties and calendar items[,]" and was generally "[u]nable to perform daily work duties." *Id.*

---

[1] For clarity, the Forest Service is an agency of USDA.

[2] For an overview of the agency's regional offices, see *Regional Offices*, U.S. DEP'T OF AGRIC. FOREST SERV., *available at* https://perma.cc/4QGU-V4KL.

[3] "A regional forester oversees forest supervisors" and is assigned to one of nine geographic regions across the United States. *See Agency Organization*, U.S. DEP'T OF AGRIC. FOREST SERV., *available at* https://perma.cc/7UTL-G4Z5.

[4] Mr. Cullerton later filed a complaint with the United States Office of Special Counsel (OSC) on January 8, 2025, alleging the Forest Service retaliated against him in response to the EEO settlement and for filing a Hatch Act complaint in October 2024. The OSC declined to investigate Mr. Cullerton's claims.

[5] Mr. Cullerton served in the United States Coast Guard from August 22, 1988, until August 21, 1990, retiring at the rank of Seaman Apprentice (SA/E-2). As of September 27, 2025, he suffered from service-connected posttraumatic stress disorder (PTSD) with delayed expression, which the United States Department of Veterans Affairs (VA) rated at 70% disabling. A February 5, 2026 VA decision increased his combined disability rating to 90% effective March 7, 2024, citing obstructive sleep apnea that was related to his service-connected PTSD.

[6] Mr. Cullerton described the "poisoning" in a January 8, 2025 email attached as an exhibit to his response to the government's motion to dismiss: "[A]n OSHA report confirmed the presence of 14 types of toxic mold exposure in my office for 1 year that poisoned me and affected my health causing new disabilities." ECF 26-1 at 105.

On July 8, 2025, about eight months after Mr. Cullerton requested immediate disability retirement, a USDA Reasonable Accommodation Specialist certified that "the medical evidence presented to the agency shows that accommodation is not possible due to [the] severity of [the] medical condition and the physical requirements of the position." ECF 13-3 at 12–13 (emphasis omitted). Citing the bases for Mr. Cullerton's VA disability rating and his description of his symptoms, the agency official added:

> Mr. Cullerton's Disability Application statement represents that he is unable to perform daily work duties and is experiencing reduced memory retention, focus, thought processing, multitasking ability, which in combination "make continued employment infeasible[."]

> The accommodation analysis relies on both medical and non-medical documentation as provided in the [Standard Form (SF)-]3112 Disability Retirement Application. Accordingly, both the medical documentation and employee's statement provide critical evidence regarding lack of accommodation options due to the severity of cognitive deficits.

ECF 13-3 at 14 (citing ECF 13-3 at 38).

This certification by the Reasonable Accommodation Specialist would seem to support Mr. Cullerton's request for disability retirement. Indeed, as later explained by the United States Office of Personnel Management (OPM), one of the criteria for disability retirement is that "[a]ccommodation of the disabling medical condition in the position held must be unreasonable." ECF 13-1 at 1–2. On October 22, 2025, OPM nonetheless denied Mr. Cullerton's application for disability retirement, explaining he "d[id] not meet the criteria for entitlement and eligibility and [was] not disabled within the meaning of the retirement law . . . ."[7] ECF at 13-1 at 1.

Two weeks later, Mr. Cullerton received a notice of proposed non-disciplinary removal signed by the same Deputy Regional Forester who signed the April 5, 2024 EEO settlement agreement. The notice recommended Mr. Cullerton's removal from federal service "based on [his] medical inability to perform the essential functions of [his] assigned position description." ECF 1-2 at 2. Employing language included in

---

[7] OPM found Mr. Cullerton "failed to establish a disabling condition" and "ha[d] not shown that accommodation or reassignment [wa]s necessary." ECF 13-1 at 4. This is facially at odds with the Reasonable Accommodation Specialist's findings that Mr. Cullerton "ha[d] a diagnosed health condition and experience[d] . . . cognitive limitations[]" that rendered him "unable to perform daily work duties" such that no "accommodation options" were available to him. ECF 13-3 at 14. But the Reasonable Accommodation Specialist did note: "The fact that your agency has determined accommodation to be unavailable due to status of a medical condition or due to restriction imposed by a physician does not guarantee that OPM will reach the same decisions about the approval of a disability retirement application." *Id.* In any case, Mr. Cullerton does not challenge OPM's decision here.

the VA disability rating and USDA's rationale for certifying that reasonable accommodation was not possible, the Deputy Regional Forester concluded: "I find it is not possible to retain you in your current position; you are unable to perform the essential functions of your position or any other position in the agency." *Id.* After reviewing Mr. Cullerton's written responses, the Regional Forester sustained the proposed removal effective August 23, 2025.[8]  At the time of his separation, Mr. Cullerton was fifty-eight years old and had nearly fourteen years of continuous federal civil service.

Six weeks later, after requesting and receiving his SF-8 (Unemployment Compensation for Federal Employees Program) on October 6, 2025, Mr. Cullerton asked for "severance information[.]" ECF 20 at 3–4.  The agency responded two hours later, stating without further explanation: "Federal government employees removed from federal service for the efficiency of the service do not receive severance pay." *Id.* at 3.

Mr. Cullerton commenced this action on November 25, 2025, alleging the Forest Service failed to award him severance pay as required under 5 U.S.C. § 5595 and 5 C.F.R. §§ 550.701–14.  In subsequent supplemental complaints filed by leave of the Court, Mr. Cullerton references additional conduct related to his termination that assertedly violated other laws and contractual provisions, including: the Due Process Clause of the Fifth Amendment to the United States Constitution; the Whistleblower Protection Act, Pub. L. No. 101-12, 103 Stat. 16 (codified as amended in scattered sections of 5 U.S.C.); the Privacy Act, 5 U.S.C. § 552a; the Health Insurance Portability and Accountability Act (HIPAA), Pub. L. No. 104-191, 110 Stat. 1936 (codified as amended in scattered sections of 42 U.S.C.); and Article 9 of the June 4, 2024 Master Agreement between the Forest Service and the Forest Service Council of the National Federation of Federal Employees (Master Agreement).[9, 10]  The government moved to dismiss Mr. Cullerton's complaint for

---

[8] Mr. Cullerton's final SF-50 reflected that he was removed from his position for "medical inability to perform." ECF 1-2 at 1 (alteration to capitalization).  The SF-50 also cited 5 U.S.C. § 7513 as the legal authority supporting the decision, ECF 1-2 at 1, which permits an agency to terminate employees to "promote the efficiency of the service."  5 U.S.C. § 7513(a).

[9] The Master Agreement can be found at U.S. DEP'T OF AGRIC. FOREST SERV., MASTER AGREEMENT BETWEEN FOREST SERVICE AND NATIONAL FEDERATION OF FEDERAL EMPLOYEES (June 4, 2024), *available at* https://perma.cc/6VSF-XXTZ.

[10] Separately, Mr. Cullerton moved "to notify the Court of material record alterations," ECF 21, "request[ed] . . . record fixity," *id.*, and moved to supplement the record with additional documents evidencing "an unstable administrative record and unresolved ministerial deficiencies," ECF 27; *see also* ECF 30 ("Plaintiff's Supplemental Rebuttal: New Evidence of Administrative Bad Faith and the Unlawful Taking of a Matured Statutory Debt as Supplemental Rebuttal to Defendant's Response to ECF No. 27.").  Because the Court is dismissing Mr. Cullerton's action in its entirety, these motions are denied as moot.  *E.g., Schirripa v. United States*, No. 16-1073, 2017 WL 2537370, at *9 (Fed. Cl. June 9, 2017) (denying as moot miscellaneous filings by a pro se litigant after granting the government's motion to dismiss), *aff'd*, 747 F. App'x 847 (Fed. Cir. 2018) (per curiam).

failure to state a claim upon which relief can be granted, arguing that, at the time of his separation from federal service, Mr. Cullerton was eligible for an immediate federal retirement annuity and, consequently, ineligible for severance pay.[11]

## DISCUSSION

### I.    Standard of Review

Mindful that Mr. Cullerton is proceeding pro se, the Court construes his filings liberally. *See Durr v. Nicholson*, 400 F.3d 1375, 1380 (Fed. Cir. 2005). Even so, "a pro se litigant still bears the burden of proving that the Court of Federal Claims has subject-matter jurisdiction over the complaint." *Horton v. United States*, No. 25-1897, 2026 WL 100602, at \*1 (Fed. Cir. Jan. 14, 2026) (per curiam) (citing *Sanders v. United States*, 252 F.3d 1329, 1333 (Fed. Cir. 2001)). In evaluating the jurisdictional propriety of a claim, the Court accepts all uncontroverted factual allegations as true. *Banks v. United States*, 741 F.3d 1268, 1277 (Fed. Cir. 2014) (citing *Gibbs v. Buck*, 307 U.S. 66, 72 (1939)). If the Court determines it lacks subject-matter jurisdiction over a claim, it must dismiss the claim "in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *accord* RCFC 12(h)(3).

A claim within the Court's jurisdictional scope may still be dismissed for failure to state a claim upon which relief can be granted under RCFC 12(b)(6). In considering whether a plaintiff has asserted a cognizable claim, this Court "must accept as true all the factual allegations in the complaint . . . and . . . indulge all reasonable inferences in favor of the non-movant . . . ." *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001) (citations omitted). "A trial court should not dismiss a complaint for failure to state a claim unless it is 'beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief.'" *Id.* (quoting *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed. Cir. 1989)). Assertions of legal conclusions are not credited during this assessment, and the complaint must include nonconclusory factual allegations setting forth a plausible—as opposed to merely conceivable—claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

---

[11] In his response to the government's motion to dismiss, Mr. Cullerton also cross-moved for summary judgment. Mr. Cullerton's Rule 56 motion—even if construed as a motion for judgment on the pleadings under RCFC 12(c)—is premature because the government is yet to file an answer. Accordingly, Mr. Cullerton's dispositive cross-motion is denied without prejudice as premature. *Cf. Vanquish Worldwide, LLC v. United States*, 140 Fed. Cl. 460, 479 (2018) ("[T]he Court will deny without prejudice the government's motion for summary judgment . . . because the motion was prematurely filed, before [plaintiff] had any opportunity for discovery.").

## II.    Subject-Matter Jurisdiction

Although Mr. Cullerton asserts claims centered on a host of laws and contractual terms, this Court lacks jurisdiction to hear all but one.[12, 13]  Indeed, in a later filing, Mr. Cullerton acknowledged that "factual and legal issues relating to retaliation, settlement compliance, due process, and whistleblower activity[]" are "outside this Court's jurisdiction" and expressed his intent "that the case proceed[] solely on the Tucker Act severance issue . . . ."  ECF 15 at 1–2 (emphasis omitted). To avoid confusion about whether any of Mr. Cullerton's claims survive this order (none do), the Court will address the jurisdictional defects of his non–severance pay claims.

First, to the extent Mr. Cullerton alleges a Fifth Amendment due process violation, "[t]he law is well settled that the Due Process clause[] of . . . the Fifth . . . Amendment[] do[es] not mandate the payment of money and thus do[es] not provide a cause of action under the Tucker Act."  *Hitsman v. United States*, 825 F. App'x 859, 862 (Fed. Cir. 2020) (per curiam) (quoting *Smith v. United States*, 709 F.3d 1114, 1116 (Fed. Cir. 2013)).  Consequently, that claim must be dismissed.

Second, Mr. Cullerton asserts violations of statutes over which this Court lacks jurisdiction.  He claims the Forest Service subjected him to "prima facie retaliation" under the Whistleblower Protection Act, 5 U.S.C. § 2302(b).  ECF 11 at 2.  That law, however, falls outside this Court's jurisdiction because "it 'in no manner mentions compensation or any right to recovery for damage sustained . . . .'" *McGhee v. United States*, 155 Fed. Cl. 380, 386 (2021) (quoting *Black v. United States*, 56 Fed. Cl. 19, 23 (2003)), *aff'd*, No. 22-1082, 2022 WL 1023806 (Fed. Cir. Apr. 6, 2022) (per curiam). Mr. Cullerton also asserts the Forest Service violated the Privacy Act and HIPAA by relying on his VA disability records in the July 23, 2025 notice of proposed removal. Again, though, this Court does not have jurisdiction over alleged violations of those statutes.  *See Buholtz v. United States*, No. 16-408, 2023 WL 2054073, at *6 (Fed. Cl. Feb. 16, 2023) (first citing 5 U.S.C. § 552a(g)(1); and then citing *Snowton v. United States*, 216 F. App'x 981, 983 (Fed. Cir. 2007) (per curiam)) (Court of Federal Claims lacks jurisdiction over Privacy Act claims), *aff'd*, No. 24-1009, 2024 WL 4647890 (Fed. Cir. Nov. 1, 2024) (per curiam); *McClay v. United States*, No. 14-1069, 2015 WL

---

[12] As the government acknowledges, the Court has jurisdiction over alleged violations of the severance pay statute because it is money mandating.  *See Wilcock v. United States*, No. 20-860, 2021 WL 1731864, at *7 (Fed. Cl. Apr. 30, 2021).

[13] The government's motion to dismiss focused on Mr. Cullerton's claim for severance pay under 5 U.S.C. § 5595 and 5 C.F.R. §§ 550.701–14 and left his other claims unaddressed.  Such an omission would typically result in the unaddressed claims proceeding to discovery.  But because the Court has identified fatal jurisdictional flaws in Mr. Cullerton's other claims, it will address them *sua sponte*. RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.");  *Folden v. United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004) ("Subject-matter jurisdiction may be challenged at any time by the parties or by the court *sua sponte*." (citing *Fanning, Phillips & Molnar v. West*, 160 F.3d 717, 720 (Fed. Cir. 1998))).

920429, at *2 & n.1 (Fed. Cl. Feb. 25, 2015) (Court of Federal Claims lacks jurisdiction over HIPAA claims).  Thus, those claims must be dismissed.

Third, the Court lacks subject-matter jurisdiction over Mr. Cullerton's charge that the Forest Service breached Article 9 of the Master Agreement.  As an initial matter, Mr. Cullerton has not shown that he is entitled to rely on this Court's Tucker Act jurisdiction to sustain a claim for a breach of an employment contract. Addressing this issue, the United States Court of Appeals for the Federal Circuit has explained:

> There is a "well-established principle that, absent specific legislation, federal employees derive the benefits and emoluments of their positions from *appointment rather than from any contractual or quasi-contractual relationship* with the government." *Chu v. United States*, 773 F.2d 1226, 1229 (Fed. Cir. 1985) (emphasis added). Although "Tucker Act jurisdiction may be premised on an employment contract," *Army & Air Force Exch. Serv. v. Sheehan*, 456 U.S. 728, 735 (1982) (citing *United States v. Hopkins*, 427 U.S. 123, 126 (1976)), if an employee's "employment was by 'appointment,' a breach of contract action against the government would be precluded," *Hamlet v. United States*, 873 F.2d 1414, 1417 n.5 (Fed. Cir. 1989).

*Soliman v. United States*, 724 F. App'x 936, 940 (Fed. Cir. 2018) (per curiam) (emphasis in original).  Mr. Cullerton has not shown that he served by contract rather than appointment.

"To determine whether a federal employee serves by appointment or contract, the Court looks to the relevant statutory language, regulations, and hiring documents." *Miller v. United States*, No. 11-766, 2012 WL 4711987, at *3 (Fed. Cl. Oct. 3, 2012), *aff'd mem.*, 627 F. App'x 932 (Fed. Cir. 2016) (per curiam).  Appended to Mr. Cullerton's complaint and supplemental filings are several SF-50s (Notification of Personnel Action), one of which references an executed "appointment affidavit" and cites a regulation that provides, "an agency may *appoint* by transfer . . . a current career or career-conditional employee of another agency," 5 C.F.R. § 315.501 (emphasis added).  ECF 26-1 at 16 (alteration to capitalization).  Thus, rather than rebutting the presumption in favor of appointment, *see Soliman*, 742 F. App'x at 940, the evidence proffered by Mr. Cullerton indicates he served by appointment rather than contract.  On this record, the Court cannot find that Mr. Cullerton served by contract.  *Cf. Piper v. United States*, 90 Fed. Cl. 498, 505 (2009) (holding employee was appointed, rather than contracted, where "the SF-50 issued by the [hiring agency] upon plaintiff's hiring indicated," among other things, "that plaintiff . . . had executed an appointment affidavit."), *aff'd*, 374 F. App'x 957 (Fed. Cir. 2010) (per curiam).

In any case, Mr. Cullerton's breach of contract claim fails because the Master Agreement contains an exclusivity provision that deprives this Court of subject-matter jurisdiction over so-called "grievable" matters. Article 9, section 6, paragraph b of the Master Agreement provides that the Master Agreement's grievance procedure is the "exclusive procedure" "[f]or those matters that are grievable . . . ," other than four exceptions not applicable here.[14] Mr. Cullerton alleges USDA failed to follow the Master Agreement's grievance procedures when it did not respond to his Step 2 Grievance. But the grievance procedures contain a provision to address such a scenario: "If the grievance is not resolved, the matter may be referred to arbitration in accordance with Article 10."[15] Consistent with the Federal Circuit's comparable evaluation of the Collective Bargaining Agreement executed by the Federal Aviation Administration in September 1998, Mr. Cullerton cannot cherry-pick certain provisions of the Master Agreement to evoke this Court's jurisdiction while circumventing the exclusive grievance procedures in the same agreement. *Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) (collecting cases), *cited in Miller*, 2012 WL 4711987, at *5 (collecting cases); *see Dunklebarger v. Merit Sys. Prots. Bd.*, 130 F.3d 1476, 1478 (Fed. Cir. 1997) ("Section 7121 of the Civil Service Reform Act of 1978 (CSRA), 5 U.S.C. § 7121, addresses the allocation of jurisdiction over employment-related complaints by federal employees who are represented by a union. . . . As the text indicates, section 7121(a)(1) requires that collective bargaining agreements with federal agencies contain negotiated grievance procedures, and it contemplates that in most cases the negotiated grievance procedures will be the exclusive means of resolving employment disputes.").[16]

Mr. Cullerton's breach of contract claim fails for the additional, independent reason that he is not a party to the Master Agreement and is thus not in privity of contract with the United States. *See Todd*, 386 F.3d at 1094 ("Appellants argue that the [agency]'s alleged breach of the [collective bargaining agreement] with the Union supplies those substantive rights for money damages against the United States. Appellants are not, however, parties to . . . the [collective bargaining agreement]. Consequently, appellants do not have a contract with the United States and cannot base a claim for money damages against the United States on a contract to which they are not a party." (first citing *Chu v. United States*, 773 F.2d 1226, 1229 (Fed. Cir. 1985); and then citing *Hamlet v. United States*, 63 F.3d 1097, 1101 (Fed. Cir. 1995))). In sum, Mr. Cullerton cannot sue for breach of the Master Agreement in this Court. *Cf. Miller*, 2012 WL 4711987, at *5 (third-party beneficiaries of VA collective

---

[14] *See* U.S. DEP'T OF AGRIC. FOREST SERV., *supra* note 9, at 29. The specified exceptions pertain to formal EEO complaints, Merit Systems Protection Board (MSPB) appeals, unfair labor practice charges filed with the Federal Labor Relations Authority, and OSC complaints. *See id.*

[15] *See* U.S. DEP'T OF AGRIC. FOREST SERV., *supra* note 9, at 31.

[16] The exceptions relate to MSPB appeals. *Dunklebarger*, 130 F.3d at 1478 (first citing 5 U.S.C. § 7121(d)–(e), (g); and then citing 5 C.F.R. § 1201.3(c)(1)).

bargaining agreement lack privity of contract with the United States to sue for a breach of that agreement in the Court of Federal Claims).

III.    Severance Pay

Citing 5 U.S.C. § 5595 and 5 C.F.R. §§ 550.701–14, Mr. Cullerton claims that "employees involuntarily separated for non-disciplinary reasons," like himself, "are entitled to severance pay." ECF 1 at 2. Section 5595 provides, in relevant part:

> (b) Under regulations prescribed by the President or such officer or agency as he may designate, an employee who—
>
>> (1) has been employed currently for a continuous period of at least 12 months; and
>>
>> (2) is involuntarily separated from the service, not by removal for cause on charges of misconduct, delinquency, or inefficiency;
>
> is entitled to be paid severance pay in regular pay periods by the agency from which separated.

5 U.S.C. § 5595(b). Mr. Cullerton contends that he "meets all statutory and regulatory criteria for severance pay," given that he "completed more than 14 years of continuous Federal civilian service" and his "separation was non-disciplinary and based solely on alleged medical inability to perform."[17] ECF 1 at 1–2.

There is no dispute that Mr. Cullerton meets the year-of-service requirement. As to the second requirement, Mr. Cullerton argues his termination should not have been characterized as a for-cause separation under 5 U.S.C. § 7513 because, according to his final SF-50, he was terminated for "medical inability to perform," *see* ECF 1-2 at 1 (alteration to capitalization), and "medical inability is not misconduct or cause[] . . . ." ECF 11 at 1 (emphasis omitted). Mr. Cullerton also asserts the Forest Service's decision to base his removal on "medical inability to perform" was pretextual, and the agency in fact eliminated his position to save costs pursuant to "DOGE Reorganization Mandates." ECF 26 at 2–4; *see also id.* at 7 ("Using [VA benefits] financial data to override a certified SF-50 performance rating is Arbitrary and Capricious as a matter of law."). The exclusive forum for these challenges, however, is the MSPB.[18] *Refaei v. United States*, 129 Fed. Cl. 1, 18 (2016) ("[U]nder *United States v. Fausto*, 484 U.S. 439 (1988), only the [MSPB], and not the Court of

---

[17] Given that Mr. Cullerton joined the Forest Service in September 2011 and was removed in August 2025, he appears to have served in the Forest Service for just shy of fourteen years. Regardless, his point that his service far exceeded the one year required by statute is well taken.

[18] Mr. Cullerton acknowledges filing multiple appeals in the MSPB and later requesting their withdrawal. Documents filed in this case, however, suggest the MSPB has continued to issue orders in at least one of Mr. Cullerton's appeals.

Federal Claims, is authorized to review removals of federal employees." (collecting cases)), *aff'd*, 725 F. App'x 945 (Fed. Cir. 2018); 5 U.S.C. § 7513(d) ("An employee against whom an action is taken under this section is entitled to appeal to the [MSPB] under section 7701 of this title.").

Even if Mr. Cullerton's separation was not for cause (again, a matter for the MSPB to decide), he is still not entitled to severance pay. The implementing regulations for 5 U.S.C. § 5595 impose strict eligibility restrictions. *See Rainey v. United States*, No. 23-1793, 2023 WL 8663078, at *2 (Fed. Cir. Dec. 15, 2023) (per curiam). Aptly titled "Eligibility for severance pay," 5 C.F.R. § 550.704 provides:

> (b) An employee is *not eligible* for severance pay if he or she:
>
> . . .
>
> (5) Is *eligible* upon separation for an immediate annuity from a Federal civilian retirement system or from the uniformed services. Such an employee is ineligible even if all or part of the annuity is offset by payments from a non-Federal retirement system the employee elected instead of Federal civilian retirement benefits or disability benefits received from the Department of Veterans Affairs.

5 C.F.R. § 550.704(b)(5) (emphasis added). The determinative question, then, is whether Mr. Cullerton was eligible for an immediate annuity when separated from the Forest Service.[19] If so, then he is not entitled to severance pay under 5 U.S.C. § 5595 by operation of 5 C.F.R. § 550.704(b)(5).

The Minimum Retirement Age plus 10 (MRA+10) annuity entitles federal employees enrolled in FERS to an immediate annuity if, at the time of their separation, they completed ten years of qualifying service and reached their designated minimum retirement age. 5 U.S.C. § 8412(g)(1). In Mr. Cullerton's case, the minimum retirement age is fifty-six years and four months under 5 U.S.C.

---

[19] The implementing regulations define "immediate annuity" as:

> (a) A recurring benefit payable under a retirement system applicable to Federal civilian employees or members of the uniformed services that the individual is eligible to receive (disregarding any offset described in § 550.704(b)(5)) at the time of the involuntary separation from civilian service or that begins to accrue within 1 month after such separation, excluding any Social Security retirement benefit; or
>
> (b) A benefit that meets the conditions in paragraph (a) of this definition, except that the benefit begins to accrue more than 1 month after separation solely because the employee elected a later commencing date (such as allowed under § 842.204 of this chapter).

5 C.F.R. § 550.703.

§ 8412(h)(1)(D), (2)(B).[20]  Mr. Cullerton was fifty-eight years old at the time of his termination from the Forest Service.  His final SF-50 further documents his enrollment in FERS and his nearly fourteen years of qualifying federal service. Having satisfied the FERS enrollment, minimum age, and federal service requirements, Mr. Cullerton was immediately eligible for an MRA+10 annuity.[21] *See Wilcock*, 2021 WL 1731864, at *8; *cf. Rainey*, 2023 WL 8663078, at *2. Consequently, he is ineligible for severance pay.[22]

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss (ECF 24) is **GRANTED**, and plaintiff's cross-motion for summary judgment (ECF 26) is **DENIED**; plaintiff's procedural motions related to the composition of the record (ECF 21, 23, 27) are **DENIED** as moot; defendant's motion to suspend briefing on plaintiff's pending motions (ECF 28) is **DENIED** as moot; the Clerk of Court is directed to **DISMISS** plaintiff's complaint (ECF 1), as supplemented (ECF 7, 11, 20), for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted consistent with this opinion; and the Clerk of Court is further directed to **ENTER** judgment accordingly.  No costs.

It is so **ORDERED**.

Armando O. Bonilla
Judge

---

[20] *See Eligibility*, U.S. OFF. OF PERS. MGMT., *available at* https://perma.cc/LU7D-ZPXN.

[21] Mr. Cullerton's assertion that he "did not apply for, elect, or receive any annuity," ECF 26 at 5, does not alter this conclusion.  Nor does Mr. Cullerton's allegation that USDA "physically refused to process the mandatory records required to make an annuity payable."  ECF 32 at 1.  "It is the *accrual* of the benefit, rather than the timing of its payment, that determines its status as an immediate annuity under the applicable regulatory language."  *Rainey*, 2023 WL 8663078, at *2 (emphasis added). Otherwise, "a former employee eligible for an immediate annuity could simply delay his application for the annuity to be eligible for severance at separation and also receive retroactive benefits from an annuity when he later applies."  *Id.*

[22] In his reply to the government's response to his motion regarding the composition of the evidentiary record, Mr. Cullerton, for the first time, raises a Fifth Amendment takings claim.  *See* ECF 30 at 4 ("[T]he Government has effectively seized Plaintiff's vested statutory property—his $95,000.00 severance entitlement—without due process, in direct violation of the Fifth Amendment Takings Clause.").  A claim raised for the first time in a reply brief, however, is raised too late.  *See Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002) ("[R]eply briefs *reply* to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration.").  In any case, Mr. Cullerton's "takings" claim is a nonstarter because, as discussed *supra*, he is not entitled to severance pay.

11